J-A21014-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
         :            PENNSYLVANIA
         :
      v.         :
         :
         :
DAVID MURAD         :
         :
      Appellant         :       No. 2571 EDA 2017

Appeal from the PCRA Order July 13, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008858-2008

BEFORE: BOWES, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:             **FILED FEBRUARY 20, 2020**

David Murad appeals from the order denying his petition filed pursuant to the Post-Conviction Relief Act ("PCRA"). Upon review, we affirm.

On November 18, 2007, Appellant was working the night shift as a cashier for Central Parking, the company which operated a parking facility at a Dave and Buster's in Philadelphia. Eighty-one-year-old Emanuel Daniel ("Victim") was also working the night shift as an assistant manager for Central Parking. As assistant manager, one of Victim's duties was to count the night's cash receipts with Appellant. At approximately 11:00 p.m., Victim approached Appellant and instructed him to bring his register drawer to the night manager's office. Once inside of the office, Appellant informed Victim that he had forgotten a parking ticket inside his cashier's booth, and Appellant left the office purportedly to retrieve the ticket.

A couple of minutes later, Appellant returned to the office accompanied by a man wearing a "lady's wig," positioned in such a way that only his eyes were visible. *See* N.T. Jury Trial – Volume One, 1/13/10, at 74. The man wearing the wig demanded that Victim "give me the money" multiple times. *Id*. at 75. Victim did not initially respond, assuming this was a practical joke. *Id*. As a result, the man repeatedly hit Victim in the head with a firearm, causing him to fall onto the floor. Appellant shouted at Victim, "give him the money, give him the money." *Id*. at 76. Bleeding from his skull, Victim briefly lost consciousness while Appellant gave the assailant approximately $5,000 in cash.

When Victim regained consciousness, Appellant was laying on top of him. His assailant pointed a gun at Victim and said, "I'm going to kill you." *Id*. at 76. Victim responded, "stop in the name of Jesus and get out. Take what you want." *Id*. The man left the office, but Appellant remained behind. Although Victim told Appellant to call 911, he did not. Instead, the sole 911 call was made by Victim, during which he can be heard screaming for assistance. *Id*. at 136-37. The assailant never directed any orders or threats at Appellant.

Philadelphia police quickly arrived at the scene. They found Victim laying on the floor in the office, which was covered in blood. Victim was immediately transported to the hospital, where he was treated for a paraorbital hematoma, skull fracture, and two rib fractures. Victim can no

longer work. He sustained memory loss and requires the assistance of a walker in order to stand and move around.

Appellant waited for the police just outside of the office. Upon their arrival, officers observed Appellant to be completely unharmed, with no blood on his clothes, and "pretty calm considering the circumstances." *Id*. at 44. Appellant told police that an unknown male, wearing a black wig covering his face, had entered the office with a handgun demanding money from the safe. He continued that he pled unsuccessfully with Victim to give in to the robber's demands, and reported that he was forced to hold Victim down while the perpetrator took the money. *Id*. at 38-42.

During their investigation, police discovered that, prior to the robbery, Appellant did not have a cell phone since his previous phone had been "turned off." *See* N.T. Jury Trial – Volume Two, 1/14/10, at 18. However, a couple of days after the robbery, Appellant spent $350 or $450 in cash to purchase a new cell phone and service.

Appellant was arrested and charged with aggravated assault, criminal conspiracy, robbery, possession of an instrument of a crime ("PIC"), and recklessly endangering another person. On January 13, 2010, Appellant proceeded to a jury trial. After the close of the Commonwealth's case-in-chief, the trial court granted defense counsel's motion for judgment of acquittal on PIC. Additionally, defense counsel and the Commonwealth stipulated that, if called, Appellant's father and girlfriend would have testified that Appellant has a reputation in the community for being a peaceful and

law-abiding citizen. *Id*. The jury convicted Appellant of the remaining charges. Sentencing was deferred pending preparation of a pre-sentence investigation report ("PSI").

On March 25, 2010, the trial court sentenced Appellant to four to eight years of imprisonment on the robbery charge, a consecutive three to six years of confinement on the criminal conspiracy charge, and a concurrent three to six years of imprisonment on the aggravated assault charge. Appellant filed a timely appeal and complied with the trial court's order to file a concise statement of errors complained of on appeal. On appeal, he challenged the sufficiency of the evidence to convict him using a vicarious liability theory, and two of the trial court's evidentiary rulings which permitted the Commonwealth to introduce testimony of Appellant's demeanor after the robbery and to tell the jury in closing argument that Appellant did not have sufficient funds prior to the robbery to purchase a cell phone. The trial court filed its Pa.R.A.P. 1925(a) opinion and we affirmed Appellant's judgment of sentence. *See Commonwealth v. Murad*, 50 A.3d 251 (Pa.Super. 2012) (unpublished memorandum). Our Supreme Court denied Appellant's petition for allowance of appeal. *See Commonwealth v. Murad*, 56 A.3d 397 (Pa. 2012).

Appellant filed a timely *pro se* PCRA petition, alleging ineffective assistance of counsel without further elaboration. Counsel was appointed and filed an amended PCRA petition on Appellant's behalf. In the amended petition, Appellant challenged trial counsel's effectiveness for: (1) failing to present evidence of Appellant's bank account statement showing that, prior

- 4 -

to the robbery, Appellant had made deposits in his savings account for a new cell phone; (2) for failing to object to a T-Mobile employee's testimony that Appellant bought a cell phone at his store without any documentation proving purchase; and (3) alleging prosecutorial misconduct during closing argument. In a supplemental PCRA petition, Appellant added an additional claim challenging trial counsel's effectiveness for failing to get Appellant's approval before stipulating to character witness testimony.

The Commonwealth filed a motion to dismiss the PCRA petition, in which it argued: (1) that the bank account claim was underdeveloped; (2) that the T-Mobile objection was meritless, as lack of supporting documentation would have gone to weight not admissibility of the testimony; and, (3) that the prosecutor's remarks were made in fair response to comments made by trial counsel during his closing statement. The PCRA court agreed with the Commonwealth, and after issuing notice of its intent to dismiss the petition without a hearing, dismissed the petition on July 13, 2017. This timely appeal followed. The PCRA court issued its Pa.R.A.P. 1925 opinion without directing that Appellant file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises three issues, which we have reordered for ease of disposition:

I.  Whether the court erred in not granting relief on the PCRA petition alleging trial counsel was ineffective.

II.    Whether the court erred in not granting relief on the PCRA petition alleging the prosecutor committed misconduct during her closing remarks.

III.   Whether the court erred in denying the Appellant's PCRA petition without a hearing on the issues raised in the amended PCRA petition regarding trial counsel's ineffectiveness.

Appellant's brief at 8.

We begin with a discussion of the pertinent legal principles. Our "review is limited to the findings of the PCRA court and the evidence of record" and we do not "disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error." *Commonwealth v. Rykard*, 55 A.3d 1177, 1183 (Pa.Super. 2012). Similarly, "[w]e grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions." *Id*. "[W]here the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary." Finally, we "may affirm a PCRA court's decision on any grounds if the record supports it." *Id*.

Appellant's first claim contains three sub-parts raising allegations of trial counsel ineffectiveness. In reviewing claims of ineffective assistance of counsel, counsel is presumed to be effective, and a PCRA petitioner bears the burden of proving otherwise. *Commonwealth v. Becker*, 192 A.3d 106, 112 (Pa.Super. 2018). To do so, the petitioner must plead and prove (1) the legal claim underlying his ineffectiveness claim has arguable merit; (2) counsel's

decision to act (or not) lacked a reasonable basis designed to effectuate the petitioner's interests; and that (3) prejudice resulted. *Id*. The failure to establish any of the three prongs is fatal to the claim. *Id*. at 113.

In his first sub-claim, Appellant challenges trial counsel's decision to stipulate to the testimony of two character witnesses rather than putting forth their live testimony. Appellant's brief at 18. In his brief, Appellant equates a stipulation to testimony with the complete failure to call a witness in order to support his premise that he was prejudiced by the absence of live character witness testimony at his trial. *Id*. at 19. We do not agree with this characterization.

At trial, Appellant's counsel read the following stipulation to the jury:

> . . . There has been a stipulation by and between counsel that if called to testify, Mr. John Correa, who is in the courtroom now, and Ms. Latice Scoffield, who was present yesterday but was not able to be present today, would testify that they both know [Appellant], they know his reputation in the community. And in the community he also has a reputation of being a peaceful and law-abiding citizen.
>
> Mr. Correa is [Appellant's] father and Ms. Scoffield is [Appellant's] girlfriend.

N.T. Jury Trial – Volume Two, 1/14/10, at 86. As a result of this stipulation and at defense counsel's request, the trial court also delivered the following instruction to the jury before it began deliberating:

> The defense offered evidence tending to prove that the defendant is a person of good character and that was done by stipulation, if you recall from family members. Now, I'm speaking of testimony of good character of the defendant being a law-abiding and peaceable individual. The law recognizes that a person of good

character is not likely to commit a crime that is contrary to that person's nature. The evidence of good character made by itself raises a reasonable doubt of guilty and requires a verdict of not guilty.

N.T. Jury Trial – Volume Three, 1/15/10, at 17.

A review of the record reveals that the jury was given the substance of the character witness testimony through stipulation and then properly instructed by the trial court regarding the nature of that evidence. Appellant cites to **Commonwealth v. Gillespie**, 620 A.2d 1143 (Pa.Super. 1993), as support for his position. However, **Gillespie** involved a complete failure to investigate and prepare potential character witnesses. That is not what happened here. Trial counsel not only interviewed the character witnesses, but they were present at trial. Also, counsel prepared and read a stipulation to the jury that contained the substance of their testimony. Since the lone case upon which Appellant relies is inapposite, Appellant has not persuaded us that live testimony from the two character witnesses would have changed the outcome that the PCRA court erred when it dismissed this claim.

Next, Appellant alleges that counsel was ineffective for failing to present a Bank of America statement to the jury showing that he had saved $500 for the purchase of a new cell phone. The Commonwealth argues, and the trial court found, that Appellant did not meet his burden because he failed to produce the actual bank statement or evidence that it ever existed. **See** Commonwealth's brief at 10; **see also** PCRA Court Opinion, 10/30/17, at 2. We agree. Without evidence that such a bank statement existed, Appellant

cannot prove that counsel did anything wrong. *See Commonwealth v. Pursell*, 724 A.2d 293, 311 (Pa. 1999) ("Claims of ineffective assistance of counsel that are based on speculation and conjecture do not adequately establish the degree of prejudice necessary; namely, that there is reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different"). Accordingly, we find that the PCRA court did not abuse its discretion when it dismissed this claim.

In his third-sub claim, Appellant argues that counsel was ineffective for failing to object to the testimony of T Mobile employee Irvin Velez, that observed Appellant come into the store where he worked and purchase a cell phone for $350 or $450 in cash in the days following the robbery. Appellant's brief at 20-21; *see also* N.T. Jury Trial – Volume Two, 1/14/10, at 68-70. Appellant explains that this testimony should have been excluded because Velez only observed Appellant making a purchase, and did not provide any documentation verifying the purchase to the jury. *Id*. at 21. The Commonwealth counters that "there was nothing objectionable about [the employee's] testimony" and counsel cannot be ineffective for failing to raise a meritless objection. Commonwealth's brief at 12. We agree.

A review of the record reveals that Mr. Velez's testimony was properly confined to his own observations of Appellant, which the Commonwealth utilized in order to help establish motive for the robbery. *See Commonwealth v. Brown*, 911 A.2d 576, 584 (Pa.Super. 2006) (allowing

evidence that the accused did not have money prior to a robbery to be introduced to establish a financial difficulties motive). Further, on cross-examination, counsel addressed all of Appellant's alleged issues when he pointed out that Mr. Velez did not know exactly how much Appellant had paid for the phone, did not have a receipt, and did not personally assist Appellant with the purchase of the phone. N.T. Jury Trial – Volume Two, 1/14/10, at 72-74. Therefore, Appellant's claim is meritless and the PCRA court did not err in dismissing it.

In his second issue, Appellant argues that counsel was ineffective for failing to object to certain remarks of the prosecutor during closing argument. Appellant's brief at 21-23. The following law applies to our review of this issue.

> With specific reference to a claim of prosecutorial misconduct in a closing statement, it is well settled that any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered. Our review of a prosecutor's comment and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. Thus, it is well settled that statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict. The appellate courts have recognized that not every unwise remark by an attorney amounts to misconduct or warrants the grant of a new trial. Additionally, like the defense, the prosecution is accorded reasonable latitude, may employ oratorical flair in arguing its version of the case to the jury, and may advance arguments supported by the evidence or use inferences that can reasonably be derived therefrom. Moreover, the prosecutor is permitted to fairly respond to points

made in the defense's closing, and therefore, a proper examination of a prosecutor's comments in closing requires review of the arguments advanced by the defense in summation.

***Commonwealth v. Jones***, 191 A.3d 830, 835–36 (Pa.Super. 2018).

Appellant identifies six statements made by the prosecutor during closing argument that counsel failed to challenge. We proceed mindful of the following: "In determining whether the prosecutor engaged in misconduct, we must keep in mind that comments made by a prosecutor must be examined within the context of defense counsel's conduct. It is well settled that the prosecutor may fairly respond to points made in the defense closing."

***Commonwealth v. Chmiel***, 889 A.2d 501, 544 (Pa. 2005). Thus, a proper examination of the comments requires a review of the arguments advanced on both sides.

First, Appellant points to the prosecutor's alleged "expression" of "personal belief in Appellant's guilt." Appellant's brief at 23. The allegedly offensive argument is reproduced in context as follows:

> . . . . **This has been my case. I prosecute cases that demand justice.** And this one is definitely one of those. It's not perfect. **I didn't adopt it to prove my winning record or anything like that.** But this case demands justice because of Emanuel Daniel, a person who came to this country and worked very hard his entire life only to have his [thirty-five]-year career ended by this brutal incident.

N.T. Jury Trial – Volume Two, 1/14/10, at 99 (emphasis added to specific statements Appellant is challenging).

- 11 -

The PCRA court reviewed these two statements and, relying on *Commonwealth v. Reid*, 99 A.3d 470 (Pa. 2014), concluded that this claim was meritless. In *Reid*, an appellant alleged that the prosecutor committed misconduct when he concluded his closing argument as follows: "the Commonwealth demands justice. [The victim] demands justice. Those of us who still believe right is right and wrong is wrong demand justice." *Id*. at 509. Our High Court disagreed, concluding that this remark was legitimately grounded in the record and did not have "the unavoidable effect of prejudicing the jurors, or creating a fixed bias or hostility that would prevent them from rendering a fair verdict based on the evidence." *Id*. at 509-10. The purported expression of belief in Appellant's guilt here was far less explicit than the one found permissible in *Reid*. Thus, we discern no abuse of discretion in the PCRA court's conclusion that Appellant's ineffective assistance claim lacks arguable merit.

Next, Appellant focuses on additional comments that he alleges "[impermissibly] inflamed the passions of the jury," since they reflected the prosecutor's personal belief in Appellant's guilt. Appellant's brief at 23. The Commonwealth counters that these remarks constituted fair response to arguments made in defense counsel's own closing argument. Commonwealth's brief at 16. The PCRA court found the claim to be meritless and we discern no error.

In his closing argument, trial counsel claimed that Appellant was merely a witness to the robbery and should not be convicted merely because he was too scared to intervene. In relevant part, trial counsel argued:

> And in deference to you, Jury No. 4, unfortunately, everybody can't be a hero. It would have been very nice. It would have been wonderful if when this took place, [Appellant] would have acted heroic and intervened and stopped all of this from happening. That is great. It sounds like a movie. We would have loved that. Unfortunately, everybody is not a hero and people get scared. And while it's nice to say, hey, it would have been great if he would have jumped and hugged this [eighty-one] year-old man. Well, if you see somebody assaulted and robbed with a gun, who's to say how any of us would respond?

N.T. Jury Trial – Volume Two, 1/14/10, at 94-95. The Commonwealth responded to the defense's innocent bystander theory:

> And when you look at this brutal incident and all of the facts, there is no way that [Appellant] was not involved, that he did not plan, that he did not orchestrate, that he did not take a role in what happened.
>
> No, I'm not saying that [Appellant] beat [Victim] about the head. **I'm not saying he [is] merely morally bankrupt for standing by and allowing it to happen. He made it happen.** He was part of it happening. You look at all of the little pieces and there is plenty of evidence here. But like I said, it's small and you can put all those little pieces together, every little fact. And these facts convict [Appellant].
>
> Sometimes it's about what the defendant doesn't do. Sometimes it's about what the gunman doesn't do. In this case I told you that I'm going to be relying on your common sense to come to the right verdict in this case. And does your common sense tell you that when the gunman enters a room where he's planning on taking control of that room to rob several thousand dollars in money and he sees an [eighty-one] year-old man and young healthy fit [twenty]-year-old man? Ignores him. Because let's be very clear on this.

> [Appellant] wasn't ordered to do a damn thing by the robber, by the gunman. He wasn't told to get down on the ground. He wasn't told to put his hands up. He wasn't told to do anything. He wasn't even addressed. He was completely ignored because he was part of the plan. No robber would ever ignore another person in the room unless he was part of it. Let's be clear on that. Your common sense is screaming to you when you hear those facts. What didn't the defendant do in this case? [Appellant] didn't try to escape.
>
> That booth is mere feet away from that door. When [Victim] put it out where [Appellant] was, right here, right by the door – he would have had to turn around and walk out that door. He could have reached across the desk and grabbed this phone and called the police. Called for help. Yelled for security. **He did nothing. That doesn't merely make him a bad person for doing nothing. It indicates his guilt.** That's why it's important. I'm not trying to prove to you the extent of [Appellant's] character. I'm trying to prove his complicity in this crime.

*Id*. at 99-102 (emphasis added to denote statements that Appellant is challenging).

Viewing the statements in their context, it is clear that the Commonwealth's comments represented a fair response to defense contentions. The Commonwealth was not calling Appellant "morally bankrupt" or "a bad person" as Appellant suggests. *Id*. at 23. Instead, the Commonwealth was arguing that the fact that the gunman ignored Appellant, a young healthy person, and instead targeted an elderly man, and that Appellant did not attempt to escape or assist, indicated that Appellant was a co-conspirator. The prosecutor properly grounded her argument in the record, making references to the circumstantial evidence the Commonwealth put forth in its case-in-chief and drawing inferences from that evidence as she was

- 14 -

entitled to do. As such, the PCRA court did not abuse its discretion when it concluded that this portion of the ineffective assistance claim lacked arguable merit.

Next, Appellant maintains that the prosecutor's reference in closing argument to her own modest wage when discussing Appellant's purchase of an expensive cell phone after the robbery was improper because "it introduced issues broader than the guilt or innocence of the accused under the controlling law." Appellant's brief at 23. The Commonwealth contends that the value of Appellant's cell phone was important evidence of motive. Commonwealth's brief at 18. While the Commonwealth concedes that the prosecutor's salary was not relevant, it argues that the comment was permissible oratorical flair. *Id*. The PCRA court agreed.

As we have previously explained, "[i]t is well settled that a prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence." **Commonwealth v. Holley**, 945 A.2d 241, 250 (Pa.Super. 2008). Importantly, "prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair." **Chmiel**, **supra** at 544.

At trial, evidence was introduced that Appellant could not afford a cell phone before the robbery. N.T. Jury Trial – Volume Two, 1/14/10, at 18. In

the days following the robbery, Appellant used cash to purchase a new cell phone. *Id*. at 70-71. The allegedly improper comment follows:

> . . . . Days after the robbery [Appellant] goes to a store and pays at least $350 in cash for a brand new cell phone. Not just an ordinary cell phone. **Not a basic cell phone like the ones maybe some of us poor government employees can afford**, but a very fancy cell phone, a PDA-type of cell phone with all kind of functions that I probably can't figure out, Internet, E-mail, all that stuff. That's what he buys, when, before, he is a parking lot cashier working minimum wage on the weekend. That's it. And all of a sudden out of the blue, days after a robbery occurs at his work, he's got a whole bunch of cash. Cash. Who pays that much cash for a cell phone? How many of you are walking around with $350 cash in your wallets right now?

N.T. Jury Trial – Volume Two, 1/14/10, at 106-07 (emphasis added in order to highlight the statement that Appellant is challenging).

This argument was derived from evidence admitted at trial. The prosecutor was entitled to rely on this evidence to advance an argument that Appellant had a financial motive to commit this crime. In fact, trial counsel did object at trial but was overruled. On direct appeal, a challenge to the court's ruling regarding the propriety of the Commonwealth's argument that Appellant bought a cell phone with money from the robbery was rejected. *Id*. at 106; *Murad*, *supra*. We find no arguable merit. Moreover, the fact that the prosecutor also included a self-effacing comment about her own salary adds nothing to Appellant's position.

Finally, Appellant alleges that the trial court erred by overruling defense counsel's objection to the prosecutor's identification of Appellant in the background on the 911 call, since no such identification was made at trial.

Appellant's brief at 24; *see* N.T. Jury Trial – Volume Two, 1/14/10, at 104-05. This issue was properly preserved and could have been raised on direct appeal. Appellant's failure to do so, or offer any explanation in his brief for why he did not raise it on direct appeal, is fatal to his claim, since issues that could have been raised on direct appeal, but were not, are waived under the PCRA. **See** 42 Pa.C.S. § 9544(b) ("[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior [PCRA petition.]").

Even if Appellant had couched this claim as one of appellate counsel ineffectiveness, he would not be entitled to relief. At the time that defense counsel objected, the trial court reminded the jurors that the arguments of counsel were not to be considered evidence and that the jury's recollection of the evidence was controlling. **Id**. at 106. Therefore, not only did trial counsel make the proper objection, but any potential prejudice caused by the prosecutor's argument was alleviated by the trial court's instruction. **See Commonwealth v. Robinson**, 864 A.2d 460, 519 (Pa. 2004) (stating that the trial court's instruction to the jury that it should not consider prosecutor's statements as evidence cured any prejudice which may have been caused by the comments made by the prosecutor). Accordingly, Appellant has failed to make out the arguable merit or prejudice prongs.

Finally, Appellant argues that the PCRA court erred when it denied his request for an evidentiary hearing. Appellant's brief at 16-17. Without any

elaboration as to why, he asserts that he was entitled to an evidentiary hearing on his ineffective assistance and prosecutorial misconduct claims. *Id*. We are unpersuaded by Appellant's boilerplate allegation.

It is well-settled that "[t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa.Super. 2008). In order "to obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Commonwealth v. Hanible*, 30 A.3d 426, 452 (Pa. 2011).

Appellant's inadequate argument has done nothing to refute the PCRA court's conclusion that a PCRA hearing was unnecessary. *See Commonwealth v. Watkins*, 108 A.3d 692, 735 (Pa. 2014) (concluding that if an appellant makes no attempt to identify specifically the "legitimate material factual disputes" that he alleges warranted a hearing, as well as develop relevant argument, his "claim of PCRA court procedural error cannot succeed"); *see also Commonwealth v. Jones*, 912 A.2d 268, 290 (Pa. 2006) (rejecting an appellant's assertion that his other claims warranted a hearing when he failed both to identify and argue with specificity what factual issues remained in contention).

Accordingly, we cannot conclude that the PCRA court's denial of an evidentiary hearing was an abuse of discretion. **See Hanible**, **supra** at 452-53 ("Appellant has failed to satisfy [his] burden as his reliance on speculation and failure to assert facts, which, if believed, would support his claim cannot be equated with a genuine issue concerning a material fact that warrants an evidentiary hearing").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/20/20