J-A24008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES ALBERT DULIO | : | |
| | : | |
| Appellant | : | No. 194 MDA 2018 |

Appeal from the Judgment of Sentence December 28, 2017
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s):  CP-36-CR-0001152-2016

BEFORE:  OTT, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OTT, J.:                    **FILED FEBRUARY 26, 2019**

James Albert Dulio appeals the judgment of sentence imposed on December 28, 2017, in the Court of Common Pleas of Lancaster County, following his conviction on charges of Possession with Intent to Deliver (cocaine) and Possession of Drug Paraphernalia.[1]  Dulio received an aggregate sentence of 3½ to 15 years' incarceration.  In this timely appeal, Dulio raises five issues.  There are three claims the trial court erred in failing to suppress physical evidence and statements, one claim the trial court erred in denying his motion *in limine* to prevent the Commonwealth from identifying him as a parolee, and one claim the trial court erred in failing to use a jury instruction submitted by Dulio regarding constructive possession.[2]  After a thorough

---

[1] 35 P.S. §§ 780-113(a)(30) and (a)(32), respectively.

[2] **See** Dulio's Pa.R.A.P. 1925(b) statement.

review of the submissions by the parties, relevant law, and the certified record, we affirm.

We relate the underlying facts of this matter as gleaned from the certified record. On February 1, 2016, the day he was arrested on the above-mentioned charges, Dulio was on parole on the charge of aggravated assault. Although in the approximate year he had been on state parole he had several technical violations, including failure to report and providing multiple positive urine samples, Dulio's parole officer, David Rine, had not sought revocation. N.T. Suppression Hearing, 12/8/2016, pp. 22, 29. Dulio was romantically involved with Alba Molina, who was on county probation. *Id.* at 10, 49. Molina's county probation officer received a tip that she was involved in drug trafficking and possessed a firearm. Based on this information, her probation officer decided to conduct a home inspection. *Id.* at 50. The county probation officers were aware that Molina was involved with Dulio, who occasionally spent time at her residence. *Id.* at 11. Accordingly, county probation notified state parole of the possibility Dulio would be at the house when the inspection took place and offered to have state parole officers accompany them. Agent Rine and another Parole Agent, Scott Lapp, accepted the offer. *Id.*

Upon arrival at Molina's home, the state parole agents waited to enter until they were informed that Dulio was present. *Id.* at 31. Upon their entry, both Dulio and Molina were handcuffed, pursuant to policy of both state and local parole agencies. *Id.* Molina admitted to the agents she possessed a gun. *Id.* at 34. At that time, the residence was searched. Agent Rine, Dulio's

- 2 -

parole officer, stayed with Dulio while Agent Lapp helped with the search of the residence. *Id.* at 36, 55-56.

In the front upstairs room, a bedroom, Agent Lapp saw a puffy, black bomber jacket that was laying on the floor. *Id.* at 79. The jacket was near a pair of red, high top sneakers and a hat. *Id.* These articles of clothing appeared to belong to a male. *Id.* Agent Lapp found a handgun in the pocket of the jacket. *Id.* Agent Lapp then went downstairs to inform Agent Rine of the gun. The agents did not tell Dulio a gun had been found in a jacket pocket.[3] Agent Rine went upstairs and saw the coat and shoes, which he recognized as belonging to Dulio, having seen Dulio wear those days before. *Id.* at 36-37. While Agent Rine was upstairs looking at the jacket, Agent Lapp asked Dulio if had a coat to wear, should they need to transport him. *Id.* at 89. Dulio said he did have a jacket and described the puffy, black jacket Agent Lapp had seen upstairs. *Id.* Dulio was then given *Miranda*[4] warnings. *Id.* at 81, 90. Agent Lapp went back upstairs, looked in the other jacket pockets and found a key to a Honda minivan that was parked in the driveway. *Id.* at 83. A search of the minivan revealed a digital scale and cocaine. *Id.* at 84-85.

---

[3] It does not appear that Dulio overheard this conversation between Agents Lapp and Rine.

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Dulio's first argument is the trial court erred in determining he had no reasonable expectation of privacy in Molina's residence. He argues the undisputed evidence presented at the suppression hearing demonstrated he was more than a casual visitor and therefore possessed a reasonable expectation of privacy in the residence.

The trial court examined the **Bostic**[5] factors in light of the evidence presented and determined Dulio did not have a reasonable expectation of privacy. Specifically,

> [f]actors to be considered in determining whether a defendant has a legitimate expectation of privacy in another person's home include: (1) possession of a key to the premises; (2) having unlimited access to the premises; (3) storing of clothing or other possessions on the premises; (4) involvement in illegal activities conducted on the premises; (5) ability to exclude other persons from the premises; and (6) expression of a subjective expectation of privacy in the premises.

**Bostic**, 958 A.2d at 553.

The trial court stated:

> [T]he fact that [Dulio] was involved in criminal activity at Ms. Molina's residence would establish reasonable suspicion to search both the residence and [Dulio's] person and property, and the fact that [Dulio] had clothing in Ms. Molina's bedroom would establish that the jacket, hat and sneakers were under [Dulio's] control. Regardless, there is no evidence to support the remaining four factors (*i.e.*, [Dulio] having a key, unlimited access to, the ability to exclude other persons from, or an expression of a subjective expectation of privacy in the premises), and thus [Dulio] failed to

---

[5] **Commonwealth v. Bostic**, 958 A.2d 543 (Pa. Super. 2008). The trial court mistakenly referred to these as the **Maldonado** (**Commonwealth v. Maldonado**, 14 A.3d 907 (Pa. Super. 2011) factors. The **Maldonado** factors address the related issue of standing.

establish he was more than a "casual visitor" at Ms. Molina's residence.

Trial Court Opinion, 7/14/2017, at 5-6.

Essentially, the trial court found two factors weighed in favor of an expectation of privacy, while four did not. The fact that Dulio may have been involved in criminal activity and his clothing was found on the premises did not outweigh the absence of a key, ability to keep others from the home, an unlimited access to the home and an expression of subjective expectation of privacy. In view of the foregoing, we find no error with the trial court's determination that Dulio did not have a reasonable expectation of privacy in Molina's home. Therefore, his objection to the search of Molina's home fails.

Next, Dulio claims his parole officers did not possess a reasonable suspicion sufficient to allow for a search of his person or property. Here, the trial court considered the eight factors enumerated in 61 Pa.C.S. § 6153(d)(6). Those factors are:

(6) The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:

   (i) The observations of agents.
   (ii) Information provided by others.
   (iii) The activities of the offender.
   (iv) Information provided by the offender.
   (v) The experience of agents with the offender.
   (vi) The experience of agents in similar circumstances.
   (vii) The prior criminal and supervisory history of the
   offender.

(viii) The need to verify compliance with the conditions of supervision.

61 Pa.C.S. § 6153(d)(6).

In general, reasonable suspicion is a "less stringent standard than probable cause." ***Commonwealth v. Holmes***, 14 A.3d 89, 95 (Pa. 2011). Additionally,

> Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.

> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

***Commonwealth v. Chambers***, 55 A.3d 1208, 1215 (Pa. Super. 2012).

The trial court detailed its findings regarding the existence of a reasonable suspicion in footnote 11 of its July 14, 2017 opinion. Specifically, the trial court stated:

> First, the observations of the agents – Agent Rine observed [Dulio's] new wardrobe, including a puffy black bomber jacket and high top sneakers like those found at Ms. Molina's residence; second, any information provided by others – information that

[Dulio] was spotted in high crime areas,[6] that [Dulio] was driving without a license, "hanging out" with a fellow parolee that had a history of using and selling drugs and then absconded from parole, [Dulio's] being with Ms. Molina who was known to sell drugs, and finally, the notification from county probation that they were going to search Ms. Molina's residence and that [Dulio] "had been dealing, possibly carrying weapon" and that he had been staying at the residence; third, the activities of the offender – although not working, save for "helping his cousin with odd jobs,["] [Dulio] failed to be at his approved residence, which was in a high crime area, on many occasions. Moreover, [Dulio] provided "many, many positive urines," which indicated the use of both alcohol and illegal drugs, to Agent Rine; fourth, any information provided by the offender; fifth, the experience of Agents with the offender; sixth, the agents['] experience in similar circumstances – Agent Rine has been a state parole agent for almost nine years; seventh, the prior criminal and supervisory history of the offender – [Dulio's] criminal record includes prior drug, firearm and assaultive charges. Moreover, [Dulio] was in violation of parole on several occasions, with Agent Rine allowing [Dulio] some "leeway" due to his mother's severe medical issues, and her subsequent passing shortly thereafter; and eighth, the need to verify compliance with the conditions of supervision – Agent Rine had prior approval from his supervisor to search [Dulio], and any possessions in his control, wherever he may be found, which was based on "the prior incidents, instances during supervision with positive drugs, the driving without a license, [and] the suspected criminal activity."

Trial Court Opinion, 7/14/2017, at 8-9, fn 11.

Mindful that a reasonable suspicion is a lesser standard than probable cause, we conclude the trial did not err in determining reasonable suspicion existed to search Dulio and his personal property, based upon a totality of the

---

[6] This factor is of limited import. The evidence of record clearly shows that Agent Rine allowed Dulio to live with his sister, who lived in a high crime area. This information is only relevant to the extent Dulio visited high crime areas other than his own neighborhood.

- 7 -

circumstances. While each factor, alone, might well be insufficient, when viewed in totality, they do provide the requisite reasonable suspicion to search Dulio's person and personal property. Accordingly, Dulio is not entitled to relief on this aspect of his claim.

Next, Dulio argues the trial court erred in determining he was not subject to a custodial interrogation when Agent Lapp returned from Molina's upstairs bedroom, having found a gun in the pocket of the black, puffy bomber jacket, and asked Dulio if he had a jacket, in the event they needed to transport him. Dulio was handcuffed and not free to move about, much less leave, at the time Agent Lapp asked the question. Further, it is uncontested that Dulio had not yet been informed of his *Miranda* rights.

We need not determine the propriety of the trial court's ruling on this issue. Regardless of whether Dulio was subjected to a custodial interrogation, the Commonwealth independently proved the jacket was Dulio's, making the admission of his statement of ownership of the jacket harmless error.[7]

_____

[7] Agent Lapp's actions regarding this issue are suspect. Immediately prior to questioning Dulio, Agent Lapp found a gun in a jacket pocket. The jacket apparently belonged to a male, was found in Molina's bedroom, Dulio was known to be romantically involved with Molina, and Dulio was the only adult male in the home at the time of the search. Agent Lapp was surely aware of the likelihood that Dulio owned the coat when he asked Dulio if he had a coat. Accordingly, the trial court's determination that Dulio offered the information in gratuitous conversation, in the event they needed to transport Dulio, is not well supported by evidence of record.

- 8 -

The evidence of record demonstrated that Agent Lapp told Agent Rine he found a gun in the pocket of a jacket, that he found upstairs in Molina's bedroom. Agent Rine went to the bedroom prior to Agent Lapp questioning Dulio. Independent of Agent Lapp's questioning, Agent Rine identified the jacket, as well as the shoes found with the jacket, as Dulio's. Agent Rine recognized the clothing because he had recently seen Dulio wear those items of clothing. Because ownership of the jacket was established free from the possible taint of improper questioning, Dulio's statement regarding the jacket was repetitive of properly admitted evidence.[8]

In his fourth issue, Dulio claims the trial court erred in denying his motion *in limine* to preclude any mention that he was on parole.

> As a general rule, evidence of crimes distinct from the charges being tried is inadmissible if the sole purpose of such evidence is to demonstrate the defendant's bad character and propensity to commit criminal act.
> …
> If evidence of other crimes is being offered for some purpose other than to prove the character of the accused, it may only be admitted "upon a showing that the probative value of the evidence outweighs its potential for prejudice."

***Commonwealth v. Santiago***, 833 A.2d 716, 728 (Pa. Super. 2003) (citations omitted).

---

[8] Dulio made two other statements that were introduced at trial. In one, he admitted he was working on the minivan; in the other, he stated everything was his, not Molina's. Dulio makes no argument regarding these statements.

The trial court heard argument on the issue, but decided that in order to provide the jury with the proper context of what transpired, it was necessary to allow them to know Dulio's status. Upon ruling, the trial court stated:

Through our discussions, I do believe that the completeness of the case exception is applicable here and the limited nature and scope of Agent Rine's testimony and his relationship to [Dulio]…does go to some probative value because it will enable [Agent Rine] to identify [Dulio] as well as setting the more complete story. I think because the search of Ms. Molina's residence comes into the story, it will tend to confuse the jury more of the respective roles of the witnesses are not made clear, and since that can be done in a very limited manner and can also be and will be addressed by the Court with a limiting instruction, that advising them that the mere fact that [Dulio] may have been under supervision on an unrelated matter is not evidence and cannot be considered evidence of his guilt in this matter and that it is not to be construed in any adverse manner by them against [Dulio].

So I do not believe it is more prejudicial than probative and I believe that any prejudice can adequately be addressed with the limiting instruction. As I said, I frankly believe that the confusion to the jury will be greater if they don't have a scorecard, so to speak, for all the players.

Trial Court Opinion, 4/13/2018, at 5, quoting N.T. 9/13/2017, at 38-39.

The trial court also gave a curative instruction as part of its jury charge:

You heard testimony that [Dulio] was supervised by the Pennsylvania Board of Probation and Parole, specifically by Agent Rine. The fact that [Dulio] may have been under supervision for a prior conviction, unrelated to the charges at issue now, is not evidence of [Dulio's] guilt. It does not prove or tend to prove any element of the offenses for which he is on trial before you, nor does it demonstrate any propensity of [Dulio] to engage in such criminal activity. I am instructing you that you cannot consider the fact of [Dulio's] parole or probation supervision in determining whether the Commonwealth has met its burden of proof with

- 10 -

respect to the offenses charged in this matter, nor may you draw any inference adverse to [Dulio] from the fact of his supervision.

Trial Court Opinion, 4/13/2018 at 6-7, *quoting* N.T. 9/14/2017 at 219-220.

Our review of the certified record leads us to find no error in the trial court's balancing of probative value and unfair prejudice in allowing the jury to learn Dulio was under supervision. Further, the jury instruction clearly informed the jury they could draw no adverse inference against Dulio from the fact of his supervision. "The law presumes that the jury will follow the instructions of the court." **Commonwealth v. Patterson**, 180 A.3d 1217, 1228 (Pa. Super. 2018) (citation omitted). Accordingly, Dulio is not entitled to relief on this issue.

Dulio's final claim is the trial court erred in failing to use his proposed jury instruction regarding constructive possession.

> "[I]n reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this [C]ourt to determine whether the record supports the trial court's decision." In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.

*Commonwealth v. Brown*, 911 A.2d 576, 582-83 (Pa. Super. 20016) (citations omitted).

Here, Dulio admits that the jury charge read by the trial court was the Suggested Standard Jury Instruction regarding possession and constructive possession, *see* SSJI (Crim) 16.01 and 16.02(b)A. Dulio further concedes the charge did not misstate the law. Appellant's Brief at 58-59. Rather, Dulio drafted and submitted an instruction that quoted from two Superior Court cases and one Supreme Court case. *Id.* at 58. He claims his proposed instruction provided greater clarity and provided "crucial aspects of the law favorable to the Defendant." *Id.* at 59.

We have reviewed Dulio's proposed instruction and find no legal errors contained therein. However, as noted above, the trial court is not obliged to read every charge proposed by a party. Dulio has cited no law that requires a trial court to read an instruction that is more favorable to the defendant than the neutral charge provided by the Suggested Standard Jury Instructions. Our review of the certified record finds the jury instruction given by the trial court provided an adequate and accurate statement of the law and we find no indication in the record that the instruction mislead the jury or prejudiced Dulio in any manner. Accordingly, the trial court did not abuse its discretion in using SSJI 16.01 and 1602(b)A. Therefore, Dulio is not entitled to relief on this final issue.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 02/26/2019