J-A01011-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EDUARDO PEREZ | : | |
| | : | |
| Appellant | : | No. 2537 EDA 2022 |

Appeal from the Judgment of Sentence Entered September 22, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000824-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EDUARDO PEREZ | : | |
| | : | |
| Appellant | : | No. 2538 EDA 2022 |

Appeal from the Judgment of Sentence Entered September 22, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000825-2017

BEFORE:   LAZARUS, P.J., PANELLA, P.J.E., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, P.J.:                    **FILED JUNE 11, 2024**

---

[*] Retired Senior Judge assigned to the Superior Court.

Eduardo Perez appeals from the judgments of sentence,[1] entered in the Court of Common Pleas of Philadelphia County, following his convictions at No. 824-2017 of one count each of rape of a child,[2] involuntary deviate sexual intercourse (IDSI),[3] unlawful contact with a minor,[4] endangering welfare of children (EWOC),[5] and indecent assault – person less than 13 years of age,[6]

---

[1] On October 7, 2022, Perez filed two timely notices of appeal, each of which included both of the above-captioned docket numbers, CP-51-CR-0000824-2017 (No. 824-2017) and CP-51-CR-0000825-2017 (No. 825-2017), in violation of our Supreme Court's dictates in **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018) (requiring appellants to file separate notices of appeal when a single order resolves issues arising on more than one lower court docket). **But see Commonwealth v. Young**, 265 A.3d 462 (Pa. 2021) (permitting an appellate court to allow for correction when a timely appeal is erroneously filed at only one docket); Pa.R.A.P. 902 (stating that "[f]ailure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but it is subject to such action as the appellate court deems appropriate, which may include, but is not limited to, remand of the matter to the lower court so that the omitted procedural step may be taken."). Thus, on February 6, 2024, this Court issued an Order directing Perez to file amended notices of appeal, one at each docket, in compliance with **Walker** and **Young**. On February 23, 2024, Perez filed compliant notices of appeal. We have corrected the caption accordingly.

Additionally, on January 11, 2023, Perez filed an application to consolidate these appeals, which this Court granted on August 18, 2023. **See** Pa.R.A.P. 513.

[2] 18 Pa.C.S.A. § 3121(C).

[3] **Id.** at § 3123(a)(1).

[4] **Id.** at § 6318(a)(1).

[5] **Id.** at § 4304(a)(1).

[6] **Id.** at § 3126(a)(7).

and at No. 825-2017 of one count each of unlawful contact with a minor, EWOC, and indecent assault – person less than 13 years of age. After careful review, we vacate Perez's convictions, and remand for a new trial.

In light of the procedural history of this case, we briefly summarize the events leading up to trial. In the summer of 2016, D.M. and C.R. (both 7-year-old children at the time of the incidents) were best friends and lived across the street from one another. D.M. and C.R. would frequently sleep over at each other's houses. C.R. lived with her grandmother, mother, younger brother, and Perez, C.R.'s step-father. When D.M. would sleep over at C.R.'s house, they slept in either the bedroom with C.R.'s grandmother or in C.R.'s younger brother's bedroom. Perez's bedroom was located down the hall from both bedrooms.

Several months after the summer of 2016, D.M. disclosed to her mother that, during the sleepovers at C.R.'s house, Perez had, over the course of the summer, watched D.M. change into her bathing suit; entered the bedroom, took off D.M.'s nightgown, and touched her vagina; inserted his penis into D.M.'s vagina; kissed both girls; and touched both girls' vaginas with his penis.

D.M.'s mother took her to the hospital and D.M. submitted to interviews with various personnel from the Philadelphia Department of Human Services (DHS). In addition, Carolina Castano, an employee of the Philadelphia Children's Alliance (PCA) trained in performing forensic interviews with child sexual abuse victims, conducted a video-recorded interview of D.M. in which D.M. discussed the abuse.

Based upon D.M.'s reports, Sharina Johnson, a DHS investigator, met with C.R. twice at C.R.'s home. C.R. denied that Perez had abused her. C.R. also denied the occurrence of any abuse during a PCA forensic interview. On December 14, 2016, Johnson interviewed C.R. an additional time, at her school, at which point C.R. admitted to having been abused by Perez. After this interview, DHS recommended that C.R. see a child abuse expert. On December 21, 2016, Dr. Maria McColgan, a pediatrician specializing in child abuse cases, conducted a physical examination of C.R., during which C.R. made statements to Dr. McColgan about Perez and the abuse.

On December 31, 2016, Perez was arrested and charged at No. 824-2017 with respect to the alleged abuse of D.M., and at No. 825-2017 with respect to the alleged abuse of C.R. The Commonwealth filed a motion to consolidate the cases, which the Honorable Glynnis Hill granted. Judge Hill presided over Perez's first trial.

Prior to his first trial, and relevant to the instant appeal, Perez filed a pre-trial motion in which he challenged Dr. McColgan's testimony as hearsay without an exception. Specifically, Perez argued that Dr. McColgan's testimony was inadmissible under Pa.R.E. 803(4), pertaining to medical diagnosis and treatment hearsay exception, because C.R.'s statements to Dr. McColgan were made in anticipation of litigation and at least some of the statements were not made for the purpose of diagnosis or treatment of C.R. Judge Hill conducted a pre-trial hearing, after which he denied Perez's motion.

On June 19-22, 2018, Perez proceeded to a jury trial, at which, *inter alia*, D.M., D.M.'s mother, Johnson, Castano, and Dr. McColgan testified for the Commonwealth. C.R., who was living in another state with her biological father at the time of trial, did not testify. Nevertheless, Dr. McColgan testified regarding C.R.'s description of the abuse pursuant to the medical diagnosis treatment exception to the hearsay rule. **See** Pa.R.E. 803(4). The Commonwealth also played for the jury a video recording of Castano's PCA interview of D.M. pursuant to the Tender Years Hearsay Act (TYHA). **See** 42 Pa.C.S.A. § 5985.1. Perez did not testify.

At the conclusion of the June 19-22, 2018 trial, the jury found Perez guilty of the above-stated offenses. On November 9, 2018, the trial court sentenced Perez to an aggregate period of 14 to 28 years' incarceration, followed by 5 years' probation. Perez filed a timely post-sentence motion, which was denied by operation of law. Subsequently, Perez filed a timely notice of appeal to this Court. **See Commonwealth v. Perez**, 241 A.3d 454 (Pa. Super. 2020) (Table).

On appeal before this Court, Perez argued, *inter alia*, that the trial court erred in allowing Dr. McColgan to testify that C.R. had identified Perez as the perpetrator of abuse, because such testimony did not fall under the medical diagnosis and treatment exception to the hearsay rule and that the trial court erred in allowing the Commonwealth's TYHA evidence where the Commonwealth had failed to provide notice of such evidence. **See id.** Relevantly, this Court found that Perez had waived his challenge to Dr.

- 5 -

McColgan's testimony, but, nevertheless, vacated Perez's judgment of sentence and remanded for a new trial because the Commonwealth had failed to provide adequate notice of the TYHA evidence. ***See id.***

Upon remand, Perez's case was reassigned to the Honorable Kai N. Scott. On January 14, 2022, Perez filed a motion *in limine* challenging, *inter alia*, Dr. McColgan's testimony as evidence that does not fall under a hearsay exception. On January 19, 2022, Judge Scott conducted a pre-trial hearing, at which Perez presented argument on Dr. McColgan's testimony. During Perez's argument, the Commonwealth informed Judge Scott that Judge Hill had previously ruled on this claim prior to Perez's first trial, and argued that Judge Scott was bound by Judge Hill's prior decision. ***See*** N.T. Omnibus Pre-Trial Motion Hearing, 1/19/22, at 45-55. Judge Scott agreed that she was bound by the law of the case doctrine and, consequently, denied Perez's motion.

On January 24-26, 2022, Perez proceeded to a second consolidated jury trial, at which the Commonwealth presented, *inter alia*, Dr. McColgan's hearsay testimony of C.R.'s statements. At the conclusion of trial, the jury convicted Perez of the above-mentioned offenses. Judge Scott deferred sentencing and ordered the preparation of a pre-sentence investigation report.

On September 22, 2022, Judge Scott conducted a sentencing hearing, after which she sentenced Perez, at No. 824-2017, to a period of 14 to 28 years in prison for his conviction of rape of a child, 14 to 28 years in prison for his conviction of IDSI, and five years' probation for his remaining

convictions of unlawful contact with a minor, EWOC, and indecent assault. Perez's sentences at No. 824-2017 were imposed concurrently to each other. At No. 825-2017, Judge Scott sentenced Perez to a period of two to four years in prison for his conviction of unlawful contact with a minor, and two periods of five years' probation for his convictions of EWOC and indecent assault. Judge Scott imposed Perez's sentences at No. 825-2017 concurrently to each other. Judge Scott imposed Perez's sentences at both dockets concurrently to each other, resulting in an aggregate period of 14 to 28 years in prison, followed by 5 years' probation.

Perez filed timely notices of appeal.[7] Perez now raises the following claims for our review:

1. Did the motions court err when, after a conviction was reversed and the judgment of sentence vacated with the matter returned for a new trial, it declared itself bound by pre-trial evidentiary rulings from the first trial?

2. Did the court err when it allowed the expert witness to repeat the non-testifying child complainant's out-of-court accusations

---

[7] Judge Scott did not file a Pa.R.A.P. 1925(a) opinion due to her appointment to the Federal Circuit Court of Appeals for the Third Circuit. **See** Statement in Lieu of 1925(a) Opinion, 1/13/23, at 1-2. Additionally, Perez did not file Rule 1925(b) concise statements due to Judge Scott's appointment. **See** Brief for Appellant, at 7 n.5 (explaining Perez's case was reassigned, but new trial court would not be authoring an opinion); **see also** Commonwealth's Brief, at 5 n.3 (agreeing Perez's case had been reassigned and new trial court would not be authoring an opinion); **id.** (urging this Court to review Perez's case despite absence of Rule 1925(a) opinion because Perez's claims can be plainly addressed "on the face of the record"). We agree that, in light of Judge Scott's appointment, we need not remand for the preparation of a Rule 1925(a) opinion or Rule 1925(b) concise statement where the claims at issue are plainly reviewable on the record before this Court.

against Perez where the parties agreed that they were not admissible under TYHA and she did not make the statements in contemplation of receiving medical treatment but instead as part of an investigative interview to facilitate litigation?

Brief for Appellant, at 4.

In his first claim, Perez argues that Judge Scott erred in concluding that she was required to deem Dr. McColgan's testimony admissible at Perez's second trial because Judge Hill had previously allowed Dr. McColgan's testimony at Perez's first jury trial. *See id.* at 19-21. Perez contends that where, as here, a new trial is granted, it "wipes the slate clean" and the trial court should start anew, including its rulings on pre-trial motions. *See id.* at 20 (citing *Commonwealth v. Paddy*, 800 A.2d 294 (Pa. 2002)). We agree.

"The admission of evidence is in the sound discretion of the trial judge[] and will not be disturbed on appeal absent a manifest abuse marked by an error of law." *Commonwealth v. Brown*, 911 A.2d 576, 584 (Pa. Super. 2006).

Generally, the coordinate jurisdiction rule, or "law of the case doctrine," commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee judge may not alter resolution of a legal question previously decided by a transferor trial judge. *See Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995). "More simply stated, judges of the same

court should not overrule each other's decision." ***Commonwealth v. Johnson***, 266 A.3d 657 (Pa. Super. 2021) (Table).[8]

However, in cases where a new trial has been granted, the slate has been wiped clean and a previous court's ruling on the admissibility of evidence "does not bind a new court upon retrial." ***Paddy***, 800 A.2d at 311; ***see also Commonwealth v. Hart***, 387 A.2d 845, 847 (Pa. 1978) ("When a court grants a new trial, the necessary effect thereof is to set aside the prior judgment and leave the case as though no trial had been held. . . . By operation of an order granting a new trial, the cause, in contemplation of law, is precisely in the same condition as if no previous trial had been held.").

Instantly, at the hearing on Perez's pre-trial motion, the following exchange occurred:

> [Defense Attorney]: My second argument is that I actually don't think that these fall under [Pa.R.E.] 803[(4)] for two reasons.
>
> The Court: [C.R.'s] statement or both statements?
>
> [Defense Attorney]: [C.R.'s] statements.
>
> * * *
>
> [Defense Attorney]: The first reason why I don't think that they fall under [Rule] 803[(4),] which is statements for diagnosis and treatment, is that [Rule 803(4)] specifically exclude[s] statements that are made for the purposes [of] medical examination that is done in preparation for litigation. Now[,] in this instance, [C.R.]

---

[8] ***See*** Pa.R.A.P. 126(b) (non-precedential decisions filed after May 1, 2019, may be cited for persuasive value).

does not have and never has had[,] and has never complained of[,] any injuries.

[Commonwealth]: Your Honor, just to briefly interrupt. **This was actually already litigated [before] Judge Hill and decided it's not the grounds for an appeal. This portion[,] I just think has already been litigated with Judge Hill. There's the notes of testimony from this hearing if Your Honor would like to see it.**

The Court: That the—

[Commonwealth]: That they shouldn't come in because they're not under purposes of medical [diagnosis or treatment] and that they were created for—. . . Judge Hill stated that they would come in under medical [diagnosis or treatment] but that's exactly the purpose of this statute[.]

* * *

The Court: Okay, [the Commonwealth] is telling me that this issue **was previously litigated**.

[Defense Attorney]: I don't think on this specific issue but I'm—

The Court: Well, on the specific issue of [Rule 803(4)]?

[The Commonwealth]: Yes.

The Court: Under [the] comment. So[,] you're saying under . . . [Rule 803(4)], this issue was raised before Judge Hill and decided and then you add on to that the fact that you're raising the comment under [Rule 803(4)], that he didn't look at the comment at that time?

[Defense Attorney]: It's the comment and then also it's the caselaw that is specifically speaking to child sex cases[.]

* * *

[The Commonwealth]: Just to be clear, Your Honor, **this specific issue was already litigated before Judge Hill, specifically with respect to this argument, that it was for the preparation of litigation was the whole argument**

- 10 -

**previously made by the prior defense counsel in front of Judge Hill**.

The Court: What is that you're speaking from?

[The Commonwealth]: I have the notes of testimony **from the first trial, Your Honor, from the motions hearing, specifically related to this. I just reread** [**prior defense counsel's**] **argument, and her whole argument that this was not for treatment or for diagnosis but that it was in anticipation of litigation was her**—

The Court: And he ruled in favor of allowing the statement to come in?

[The Commonwealth]: Yes, Your Honor.

The Court: Okay, so he already—**she's saying that all of it was previously litigated**[.]

* * *

The Court: **It was previously litigated and it's done**. . . **That's not an issue for this court.**

* * *

The Court: **Well, I think Judge Hill has already ruled on that . . . So[,] the motion to preclude that from coming in is denied because its already been decided by Judge Hill and I agree with Judge Hill**.

N.T. Omnibus Pre-Trial Motion Hearing, 1/19/22, at 45-55 (emphasis added).

Based upon the foregoing, contrary to the Commonwealth's contention,[9]

we conclude that Judge Scott determined she was bound by Judge Hill's prior

_____

[9] In its brief, the Commonwealth argues that Judge Scott conducted a full hearing and did not conclude she was bound under the law of the case doctrine, but rather that Judge Scott agreed with Judge Hill's rationale from the first hearing. **See** Commonwealth's Brief, at 7-9.
*(Footnote Continued Next Page)*

decision under the law of the case doctrine. The record reflects that Judge Scott did not conduct a merits review of this claim. *See id.* Indeed, the transcript reflects that nearly every attempt made by Perez's defense attorney to litigate the Rule 803(4) evidentiary issue was interrupted by the Commonwealth's assertion that Judge Hill had already ruled upon the evidentiary issue **at the first trial**. *See id.* Defense counsel's final attempt to litigate this issue was met with Judge Scott's decision that "[i]t was previously litigated and it's done." *See id.* at 54-55.

Judge Scott's final statement that she "agree[s] with Judge Hill," does not remedy the fact that there was no hearing, let alone discussion, on the merits of the Rule 803(4) claim. *See id.* at 54-55. The record, as detailed *supra*, reveals little to no discussion of the Rule 803(4) medical diagnosis and treatment issue. *See id.* at 45-55. Rather, the parties and the trial court

_____

Based upon our review of the record, we find this argument to be deliberately misleading and disingenuous. It is clear from the quoted portion of the pre-trial hearing that the Commonwealth expressly argued to Judge Scott that she was bound by Judge Hill's prior decision. *See* N.T. 1/19/22, at 45-55. However, now on appeal, the Commonwealth claims the opposite and asserts that Judge Scott based her decision upon a thorough hearing. *See* Commonwealth's Brief, at 7-9. The Commonwealth cannot have it both ways, and we remind the Commonwealth that **all attorneys** have a duty of candor towards a tribunal. *See* Pa.R.P.C. 3.3 (Rule of Profession Conduct providing that all attorneys have duty of candor toward tribunal). As discussed *infra*, our review has led us to the inevitable conclusion that Judge Scott erred by relying upon the law of the case doctrine, and, consequently, the Commonwealth's assertion to the contrary is unavailing.

spent the lion's share of the hearing debating the law of the case doctrine. *See id.* at 45-55.

However, the grant of a new trial "wipes the slate clean" so that a previous court's ruling on the admissibility of evidence generally does not bind a new court upon retrial. *See Paddy*, *supra*. Consequently, we conclude that Judge Scott's reliance on the law of the case doctrine constituted an error of law. *See Starr*, *supra*. Accordingly, we vacate Perez's convictions, and remand for a new trial.[10]

_____

[10] In light of our disposition, we need not address Perez's second claim, that the trial court erred in admitting Dr. McColgan's testimony under the medical diagnosis and treatment exception to the hearsay rule. *See* Brief for Appellant, at 21-27. Specifically, because the trial court **did not** address the merits of this claim, but rather erroneously concluded that it was bound by the law of the case doctrine, the record is not properly developed for a merits review of this claim upon appeal.

Nevertheless, it seems certain that this issue will arise for a third time upon remand. Thus, we note that, pursuant to the medical diagnosis and treatment exception to the hearsay rule, a hearsay statement is admissible if it is "made for—and is reasonably pertinent to—medical treatment or diagnosis in contemplation of treatment; and [] describes medical history, past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to treatment, or diagnosis in the contemplation of treatment." Pa.R.E. 803(4)(A)-(B). The rationale for admitting statements made for the purposes of medical treatment is that a declarant seeking medical care has a strong motivation to speak truthfully. *See id.* Cmt. This rationale does not apply where the statements are made for litigation purposes. *See id.*

Instantly, Dr. McColgan was a child abuse expert, not C.R.'s treating physician. In fact, the parties agree that C.R. was not referred to Dr. McColgan by another physician for medical purposes. *See* Brief for Appellant,
*(Footnote Continued Next Page)*

Judgments of sentence vacated. Cases remanded for a new trial. Jurisdiction relinquished.

Panella, P.J.E., joins this Memorandum. Colins, J., files a Concurring Dissenting Statement.

_____

at 24-25; Commonwealth's Brief, at 12. Rather, C.R. was referred to Dr. McColgan by a DHS investigator. Consequently, upon remand, the trial court should examine whether or not C.R.'s referral to Dr. McColgan by a non-physician, but rather by the investigatory arm of DHS, was for medical or litigation purposes in accordance with Rule 803(4).

Moreover, we observe that Dr. McColgan's hearsay testimony identifies Perez in the alleged abuse of C.R. Therefore, if the trial court concludes that C.R.'s referral and statements to Dr. McColgan were for medical purposes, then the trial court should also examine whether C.R.'s identification of Perez falls within the medical diagnosis and treatment exception to the hearsay rule. ***See Commonwealth v. Smith***, 681 A.2d 1288, 1291-92 (Pa. 1996) (discussing F.R.E. 803(4), pertaining to medical diagnosis and treatment hearsay exception, and concluding that identification of an abuser was not pertinent to treatment of victim's scalding burns, and goal of "protection from further abuse" did not relate to medical diagnosis or treatment for purposes of F.R.E. 803(4)); ***but see*** Pa.R.E. 803(4) Cmt. ("**Pa.R.E. 803(4) differs from F.R.E. 803(4) in that it permits admission of statements made for purposes of medical diagnosis only if they are made in contemplation of treatment**. Statements made to persons retained solely for the purpose of litigation are not admissible under this rule. The rationale for admitting statements for purposes of treatment is that the declarant has a very strong motivation to speak truthfully. This rationale is not applicable to statements made for purposes of litigation. Pa.R.E. 803(4) is consistent with Pennsylvania law. ***See*** [] ***Smith***[, ***supra***]") (emphasis added).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>6/11/2024</u>